UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| LINDA K. DEHART<br>(Social Security No. XXX-XX-5256),<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social<br>Security,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 4:12-cv-137-WGH-TWP |

**ENTRY ON JUDICIAL REVIEW**

This matter is before the Honorable William G. Hussmann, Jr., pursuant to the parties' consents and an order referring the case on January 30, 2013. (Docket Nos. 8, 12, 15). Linda K. Dehart seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner," "SSA"), which found her not disabled and therefore not entitled to Disability Insurance Benefits ("benefits") under the Social Security Act ("the Act"), 42 U.S.C. § 301 *et seq.* For reasons stated below, the Commissioner's decision is **AFFIRMED.**

**I.    Background**

    **A.    Procedural History**

Dehart applied for benefits on August 10, 2010, alleging a disability onset date of August 14, 2009. (R. 137). She was 48 years old on the alleged

onset date and has a limited education. (R. 29). Her applications were denied initially and upon reconsideration. (R. 80-83, 90-96). Dehart had a hearing before an administrative law judge ("ALJ") on May 7, 2012, at which Dehart and a vocational expert ("VE") testified. (R. 16). On May 21, 2012, the ALJ issued an opinion finding that Dehart was not disabled. (R. 30). The Appeals Council denied her appeal on October 11, 2012 (R. 1-6), leaving the ALJ's decision as the final decision of the Commissioner. 20 C.F.R. §§ 404.955(a), 404.981. As a final decision, jurisdiction is proper in this court. 42 U.S.C. § 405(g).

    **B.    ALJ Findings**

The ALJ's decision included the following findings: (1) Dehart had not engaged in any substantial gainful activity since the alleged onset date; (2) she had the following severe impairments: lumbar spine mild facet osteoarthropathy at L5-S1; chronic obstructive pulmonary disease ("COPD"); headaches; major depressive disorder; and anxiety disorder (panic disorder and social anxiety); (3) none of these impairments, alone or in combination, met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1 listing" or "Listing") (R. 18-23); (4) Dehart had a residual functional capacity ("RFC") to perform light work, except that she: could only lift, carry, push, or pull up to 20 pounds occasionally and ten pounds frequently; could not stand and/or walk for more than six hours in an eight-hour workday; could not sit for more than six hours in an eight-hour workday; could only occasionally stoop, kneel, crouch, crawl, or climb ramps or stairs;

could never climb ladders, ropes, or scaffolds, work at unprotected heights, or work around hazardous machinery; must avoid concentrated exposure to several environmental factors; could remember and carry out only short, simple instructions; could not sustain concentration for more than two hours at a time without a five-minute rest break; could not interact with the general public at all or more than superficially with coworkers or supervisors; and could not handle more than ordinary or routine changes in work setting or duties (R. 24-28); (6) given Dehart's age, work experience, education, and RFC, she could return to her past relevant work as an assembler (R. 28-29); and (7) even if she could not return to that work, there existed other jobs in significant numbers in the national economy she could perform. (R. 29-30). Based on these findings, the ALJ concluded that Dehart was not disabled. (R. 30).

## II.    Legal Standards

In order to qualify for disability benefits, Dehart must establish that she suffered from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To establish disability, the claimant must present medical evidence of an impairment resulting "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 416.908; 404.1508.

The Social Security regulations outline a five-step inquiry the ALJ is to perform in order to determine whether a claimant is disabled. The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an Appendix 1 listing for an impairment so severe it precludes substantial gainful activity; (4) is unable to perform her past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4). The burden of proof is on Dehart for steps one through four; only after Dehart has met her evidentiary burden does the burden shift to the Commissioner at step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (internal quotation omitted); *see also Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997).

**III. Discussion**

On appeal, Dehart raises three issues. She alleges that: (A) the ALJ failed to discuss all relevant evidence; (B) she did not get to adequately examine the VE; and (C) the ALJ erred in his analysis of Dehart's Global Assessment of Functioning ("GAF") scores.

### A. The ALJ's discussion of relevant evidence:

Disability Determination Bureau ("DDB") consulting psychologist Dr. Ann Lovko examined Dehart on October 15, 2010 and, in her Mental RFC Assessment ("MRFC form") determined that Dehart had moderate limitations in her: ability to understand, remember, and carry out detailed instructions and ability to maintain attention and concentration for extended periods. (R. 346). From that, Dr. Lovko concluded on her Psychiatric Review Technique form ("RFC assessment") that Dehart had moderate limitations in concentration, persistence, and pace ("CPP"). (R. 360).

Dehart alleges that the ALJ failed to consider Dr. Lovko's opinion, and thus did not consider all relevant evidence, *Clifford*, 227 F.3d at 871; *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000), and at least minimally discuss that evidence. *See id.* at 870 (citing *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994)); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). Dehart further claims that the ALJ's only considerations of her concentration problems were flawed. First, the ALJ "limiting" Dehart to no more than two hours of sustained attention and concentration punctuated by a five-minute rest break (R. 24) is really no limit at all, since virtually all jobs allow for breaks after two hours of work. Second, the ALJ restricting Dehart to following "short and simple instructions" (R. 24) has been considered insufficient to account for moderate CPP limitations. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618-19 (7th Cir. 2010). The imposition of meaningless and insufficient limitations means there is no logical bridge from the evidence to the ALJ's RFC.

5

Dehart's argument is unfounded for two reasons. First, the ALJ gave significant weight to DDB examining psychologist Dr. Greg Lynch, who concluded in October 2010 that Dehart was only slightly limited in her capacity to understand, remember, and carry out instructions for simple repetitive tasks and her concentration and attention for those tasks. Moreover, Dehart was only moderately limited in her ability to respond appropriately to others at work and pressures of work. (R. 22-23, 27-28, 322-26). After a second examination in May 2011, Dr. Lynch found that Dehart was not limited in her ability to understand, remember, and carry out simple repetitive tasks or to sustain CPP for those tasks. She had only slight limitations in ability to tolerate stress and pressure of day-to-day employment. Most importantly, Dehart's "ability to sustain attention and concentration towards performance of simple repetitive tasks does not seem limited." (R. 452). Dr. Lynch's opinion may, by itself, constitute substantial evidence, and the ALJ discussed it extensively.

Second, Dehart's characterization of Dr. Lovko's opinion is misguided. As the Commissioner points out, the ALJ did examine Dr. Lovko's opinion and assigned it significant weight, finding it "consistent with Dr. Lynch's psychological report and adequately accommodates [Dehart's] mental condition." (R. 28). Despite her moderate CPP limitations, the ALJ noted that Dr. Lovko concluded that Dehart could understand, remember, carry out, and handle the stress of unskilled to semi-skilled tasks. Dr. Lovko also opined that Dehart could stay on task long enough to complete those tasks. (R. 348, 360).

These findings were affirmed by DDB reviewing psychologist Dr. F. Kladder. (R. 454). The ALJ's restriction to short and simple instructions in his RFC determination was to give Dehart "the fullest benefit of the doubt" for any alleged CPP problems. (R. 28).

The court can easily trace the path of reasoning between the ALJ's thorough discussion of Drs. Lovko and Lynch's opinions and his RFC determination that she could perform simple, repetitive tasks so long as consideration was given to her reduced stress tolerance and difficulty with others. (R. 27-28). While the ALJ did not discuss the moderate limitations opined by Dr. Lovko in the MRFC form, the ALJ need not address every piece of evidence from an examining medical source, so long as the source opinion is adequately discussed. *See Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008). The court finds the ALJ did so, and his RFC determination was therefore supported by substantial evidence.[1]

Further, the ALJ limiting Dehart to two hours of sustained concentration and short, simple instructions (R. 24) was not legal error. The *O'Connor-Spinner* court found that the ALJ erred by incorporating moderate CPP

---

[1] The Commissioner discusses at some length that Dr. Lovko listed her finding that Dehart was moderately limited in her ability to maintain attention and concentration on the MRFC form (R. 346-49), not the RFC assessment itself (R. 350-63). Moreover, the MRFC form is merely a worksheet to ensure that the source opinion has considered all pertinent mental activities, and it is the RFC assessment that the ALJ should rely on in making his determination. (Social Security Administration Program Operations Manual System ("SSA POMS") DI 25020.010(B), Mental Limitations, 2001 WL 19334437; *see also* SSA POMS, DI 24510.060B, Mental Residual Functional Capacity Assessment, 2001 WL 1933367). Since the court finds that the ALJ properly incorporated Dr. Lovko's opined limitations into his RFC determination, including those on the MRFC form, and Dehart does not specifically allege error for this reason, the court does not find the ALJ erred.

limitations into the claimant's RFC but failing to include them in the hypothetical to the VE. 627 F.3d at 617-18, 620. In this case, the ALJ mentioned both Dehart's limitation to simple, repetitive tasks along with her CPP limitations. (R. 64-65). Moreover, as the Commissioner correctly points out, the Seventh Circuit has not held that a limit of simple, repetitive work can never account for moderate CPP limitations; rather, an ALJ is merely not to assume that such a limit will automatically account for such limitations. *See Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009).

In *Johansen v. Barnhart*, the consulting physician translated his findings of moderate limitations found on the MRFC form into an RFC assessment, which the ALJ incorporated both into the RFC determination and hypotheticals presented to the VE. 314 F.3d 283, 289 (7th Cir. 2002). The court held that under such circumstances, limiting a plaintiff to low-stress, repetitive work adequately accounted for his moderate CPP limitations, and the ALJ was permitted to rely on the VE's testimony as substantial evidence. *Id.*; *see also Milliken v. Astrue*, 397 F. App'x. 218, 221-22 (7th Cir. 2010); *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007). In this case, Dr. Lovko translated her MRFC findings into an RFC assessment (R. 350-62), which the ALJ largely incorporated into the RFC and the hypotheticals posed to the VE. (R. 24-28, 64-65).

When the ALJ did not follow Dr. Lovko's assessment, he made it more restrictive—that is, more favorable to Dehart—than Dr. Lovko's assessment would have suggested. (R. 28). Therefore, the ALJ's mentioning of Dehart's

8

moderate CPP limitations in the RFC assessment and limiting her to simple, unskilled work in the hypotheticals to the VE were reasonable; in fact, these were the only restrictions supported by record evidence. *See Herron*, 19 F.3d at 337; *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992). The court thus finds the ALJ did not err.

Finally, the court wishes to address Dehart's baffling accusation that the Commissioner violated the *Chenery* doctrine by using post-hoc rationalizations to support the ALJ's decision. *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88, 63 S. Ct. 454, 87 L. Ed. 626 (1943); *Spiva v. Astrue*, 628 F.3d 346, 348, 353 (7th Cir. 2010). The ALJ, as discussed *supra*, gave significant weight to Dr. Lovko's opinion and incorporated it—including the moderate CPP limitations—into his well-supported RFC determination. Thus, the Commissioner was permitted to rely on that evidence to support the ALJ's decision.

The RFC determination and hypotheticals to the VE were reasoned, well-supported, and free of legal error. Therefore, the RFC must be upheld, and the ALJ was permitted to rely on the VE's testimony as substantial evidence.

### B. Examination of the VE:

During the hearing before the ALJ, Dehart's attorney attempted to ask the VE if "two hours of concentration and rest breaks of only five minutes in between . . . [would] be a lot more coordinated with slight [CPP limitations] than with moderate." (R. 69). The ALJ, stating that it impermissibly called on the VE to supply a definition of a slight or moderate limitation, directed the VE not to answer unless the attorney provided the VE with a definition of slight or

9

moderate limitations. (R. 70-71). Dehart's attorney did not do so, and the ALJ instructed him to "move on." (R. 71). The ALJ subsequently noted that the definition of moderate CPP limitations was found in SSA regulations. (R. 72 (citing 20 C.F.R. § 404.1520(c); 20 C.F.R. Part 404, Subpart P, Appendix 1 Listing 12.00)). Dehart claims that the ALJ improperly limited her right to cross-examine the VE, since whether moderate CPP limitations are consistent with the ALJ's hypothetical is legitimate grounds for cross-examination. (Plaintiff's Brief 4). She further argues that the testimony is necessary because of Dr. Lovko's opinion that Dehart was moderately limited (R. 346, 360), there was no definition of "moderate limitations" in the regulations cited by the ALJ, and 20 C.F.R. § 404.1520a "seems to require the middle rating to be often rather than moderate." (Plaintiff's Brief 5).

The Commissioner rejoins that Dehart's attorney's questions were repetitive and the VE's testimony was clear: since the VE was not a medical expert, she looked to the medical source's RFC assessment, which had incorporated the MRFC form, to determine how restrictive the source's opined moderate limitations actually were. (R. 69, 72-73). Only when Dehart's attorney continued to press for what was essentially a psychological opinion on what moderate limitations were did the ALJ stop the questioning. (R. 74-75).

The court finds Dehart was not deprived of an adequate opportunity to cross-examine the VE. The VE testified that she looked to how the medical source defined moderate limitations. By reading Dr. Lovko's reports, the VE reasonably concluded that Dr. Lovko defined moderate CPP limitations as still

allowing unskilled and semi-skilled work. (R. 348, 360, 362). While it is true the effects of "moderate impairments" are not expressly defined in the SSA regulations in the same way that "mild" or "severe" limitations are, *see* 20 C.F.R. § 404.1520a(d)(1-2), the regulations do provide for the DDB examiner to have "overall responsibility for assessing medical severity and for completing and signing the standard document." 20 C.F.R. § 404.1520a(e)(2). Therefore, the VE was entitled to rely upon Dr. Lovko's interpretation of what moderate limitations in CPP and attention (R. 348, 360) were, and how they impacted Dehart's ability to perform work. *See Johansen*, 314 F.3d at 286-89. The Commissioner is correct that asking the VE to define moderate limitations, or to differentiate between moderate and slight in a manner not defined by medical sources or SSA regulations, goes beyond the scope of the VE's expertise. The ALJ's decision to halt that line of questioning was reasonable and did not deprive Dehart of the ability to adequately cross-examine the VE. The ALJ therefore did not commit reversible error.

   **C. ALJ did not improperly consider the GAF scores:**

  During Dehart's treatment with Lifespring Mental Health ("Lifespring") between September 2011 and April 2012, she was assessed a GAF score, which is designed "for reporting the clinician's judgment of the individual's overall level of functioning." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION 30 (6th ed. 1994) ("DSM-IV"). During this time, she was never assessed a score higher than 46 (R. 470, 474, 476, 479, 481, 484), which indicates "serious symptoms . . . or any impairment

in social, occupational, or school functioning (e.g., no friends, *unable to keep a job*)." *Id.* 32 (emphasis added). The VE read this definition at Dehart's hearing and stated that "an individual with those ratings, from a vocational perspective, would be unable to keep a job." (R. 76).

The ALJ nonetheless discounted the GAF scores on the grounds that "'[t]he clinical and scientific considerations involved in categorization of [mental conditions] may not be wholly relevant to legal judgments, for example, that take into account such issues as individual responsibility, *disability determination*, and competency.' Thus, a GAF score is a subjective, rather than an objective[,] measure." (R. 21 (quoting DSM-IV xxvii) (emphasis added)). Dehart argues that, given the VE's testimony that someone with Dehart's GAF scores could not sustain gainful employment, the ALJ erred by discounting the scores, and the evidence dictates a finding of disability. (Plaintiff's Brief 5-6).

The court disagrees. As the Commissioner points out, "nowhere do the [SSA] regulations . . . require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Moreover, the American Psychiatric Association removed GAF scores from the Diagnostic and Statistical Manual of Mental Disorder's Fifth Edition ("DSM-V"), released in May 2013. Thus, the VE's testimony was directly contradicted by the DSM-IV and would not even be allowed under DSM-V's parameters. The ALJ's decision to discount the importance of Dehart's GAF scores—and the VE's testimony on the vocational impact of those

12

scores—was well-founded, and the court does not find the ALJ erred in doing so.

## IV. Conclusion

For the foregoing reasons, the court **AFFIRMS** the ALJ's decision denying Ms. Dehart's benefits. Judgment shall now issue accordingly.

**IT IS SO ORDERED** the 9th day of December, 2013.

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Served electronically on all ECF-registered counsel of record.**